UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: Sept. 23, 2017
```

---

Beyonce Giselle Knowles-Carter, et al.

                    Plaintiffs,

        —v—

Feyonce, Inc., et al.

                    Defendants.

---

16-cv-2532 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

Before the Court are the Plaintiffs' (Beyoncé Giselle Knowles-Carter and BGK

Trademark Holdings, LLC) motion for default judgment against the Corporate Defendant,

Feyonce, Inc., Dkt. No. 55, and the Individual Defendants' (Andre Maurice and Leanna Lopez)

motion to dismiss this case for lack of venue or, in the alternative, transfer it to the Western

District of Texas, Dkt. No. 60.[1]  For the following reasons, the Court denies both motions.

## I.      Motion for Default Judgment

The Court first addresses the Plaintiffs' motion for the entry of default judgment against

the Corporate Defendant in this case, Feyonce, Inc.  For the reasons that follow, the Court denies

that request without prejudice to its renewal at the conclusion of this action against the actively

litigating Individual Defendants.  *See Aspen Ins. UK Ltd. v. A & R Able Corp.*, No. 12 CIV.

00261 (AJN), 2013 WL 10897793, at *2 (S.D.N.Y. Jan. 2, 2013) (denying a motion for default

---

[1] The motion to transfer is purportedly made on behalf of the Corporate Defendant as well, *see* Dkt. No. 60,
at 1, but because a corporation may not appear in a federal action without counsel, *see Lattanzio v. COMTA*, 481
F.3d 137, 139-40 (2d Cir. 2007), and, as explained *infra*, Feyonce Inc. lacks representation, the Court deems the
motion to have been made by and on behalf only of Mr. Maurice and Ms. Lopez.

1

judgment that would have the effect of prejudicing actively litigating parties with leave to refile it upon conclusion of the case as to those defendants).

### A. Background

On April 5, 2016, the Plaintiffs in this action filed their Complaint against Defendants Andre Maurice, Leanna Lopez, Lee Lee, and Feyonce, Inc.  Dkt. No. 1 ("Complaint").  Without distinguishing among defendants, the Complaint alleges, *inter alia*, that the "Defendants own the domain name <feyonceshop.com> and own and operate the retail website associated therewith," *id.* ¶ 34; that the Defendants – again, collectively – "purposefully adopted the FEYONCÉ mark that is imitative of Plaintiffs' famous BEYONCÉ mark," *id.* ¶ 36; and that the Defendants sell merchandise using the brand name "FEYONCÉ" and have applied for trademark registration for the same, *id.* ¶¶ 4-8.  The Complaint asserts causes of action for Federal Trademark Infringement, in violation of 15 U.S.C. § 1114, Federal Unfair Competition, in violation of 15 U.S.C. § 1125(a), Federal Trademark Dilution, in violation of 15 U.S.C. § 1125(c), Deceptive Acts and Practices, in violation of New York General Business Law § 349, Trademark Dilution, in violation of New York General Business Law § 360-L, common law unfair competition, and unjust enrichment.  The Plaintiffs seek as relief, first, an injunction enjoining all Defendants from using the Feyoncé mark and requiring that they transfer control of the domain name <feyonceshop.com> to Plaintiffs; second, compensatory, statutory, and exemplary damages; third, an accounting of Defendants' gains and profits; and fourth, costs and attorney's fees. *Id.* at 23-25.

On July 14, 2016, Defendants Andre Maurice and Leanna Lopez filed an answer on behalf of themselves and purportedly on behalf of the Corporate Defendant.  Dkt. No. 33.  Lopez and Maurice are representing themselves in this action *pro se*, and have not retained counsel for

2

Feyonce, Inc. On August 3, 2016, the Plaintiffs requested that the Clerk of Court enter default against Feyonce, Inc., for failing to appear in this action. Dkt. No. 36; *see also Lattanzio*, 481 F.3d at 139 (stating that a corporation may not be represented by a lay-person in federal court). On August 10, 2016, the Clerk issued a certificate of default. Dkt. No. 42. The Court thereafter denied the Plaintiffs' motion to issue an order to show cause, at the request of the Individual Defendants, to give them additional time to secure counsel for the Corporate Defendant. *See* Dkt. Nos. 43, 45. After the Individual Defendants again failed to secure counsel for the Corporate Defendant, the Court issued an order to show cause why default judgment should not be issued against Feyonce, Inc. Dkt. No. 50.

At a hearing on November 10, 2016, the Plaintiffs requested that the Court enter default judgment and award them two forms of relief. First, the Plaintiffs sought the broad injunctive relief requested in the Complaint, including transfer of the domain <feyonceshop.com> to the Plaintiffs, and an injunction that would prevent Feyonce, Inc, as well as, *inter alia*, its "affiliates, officers, partners, managers … and all other persons or entities acting in concert or participation with [it]" from using the Feyoncé mark. Dkt. No. 55-7, at 2. The Plaintiffs also requested attorney's fees, costs, and disbursements totaling $35,000. *Id.* at 3.[2]

## B. Legal Standard

Federal Rule of Civil Procedure 55, in concert with Rule 54, sets out a two-step procedure to be followed for the entry of judgment against a party who fails to appear in a case:

---

[2] At the order-to-show-cause conference, the Court sought supplemental briefing from the Plaintiffs as to whether the Court could grant an injunction with such a broad scope as a remedy for default when other Defendants would be affected. *See* Nov. 10, 2016 Tr. The Plaintiffs thereafter provided such briefing, although they did not address *Frow v. De La Vega*, 82 U.S. 552 (1872) or the other case-law cited herein. *See* Dkt. No. 67. On May 11, 2017, the Individual Defendants filed a letter in opposition to the motion for default judgment, in which they argued that it would be unfair to hold Feyonce, Inc., in default for the Individual Defendants' inability to locate corporate counsel, and that the facts would not ultimately establish liability. *See* Dkt. No. 78.

first, the entry of a default, and second, the entry of a default judgment. *New York v. Green,* 420 F.3d 99, 104 (2d Cir. 2005). The entry of a default, which has already been entered by the Clerk in this case, "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *City of New York v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 128 (2d Cir. 2011); Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). The entry of a default judgment "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled." *Mickalis Pawn Shop,* 645 F.3d at 128.

Federal Rule of Civil Procedure 54(b) governs when a district court may enter a default judgment against a party where other parties continue to actively litigate. The Rule states that "[w]hen an action presents more than one claim for relief – whether as a claim, counterclaim, crossclaim, or third-party claim – or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed.R.Civ.P. 54(b).

**C. Discussion**

As noted, although the Corporate Defendant (Feyonce, Inc.) in this case has unquestionably defaulted, the Individual Defendants (Andre Maurice and Leanna Lopez) continue to actively litigate. Notwithstanding the Individual Defendants' continued denial of the allegations in the Complaint, the Plaintiffs request a default judgment against the Corporate Defendant, including an injunction that would have the effect of transferring to the Plaintiffs a web-site alleged to be jointly owned by the Individual Defendants, and enjoining those

4

Defendants from engaging in activity they continue to maintain does not violate any of the Plaintiffs' rights. For the following reasons, the Court concludes that, under these circumstances, it should not grant a default judgment at this time.

The question of when a district court may grant a default judgment – rather than merely a certificate of default – against one defendant in a multi-defendant case when other defendants continue to actively litigate has received extensive, and not always consistent, treatment in the Second Circuit, specifically, and federal courts, generally. The Court addresses this case-law, before explaining why, notwithstanding a lack of clarity as to the precise legal rule, a default judgment should not issue at this time against Feyonce, Inc.

In *Frow v. De La Vega*, the Supreme Court addressed a scenario where a number of defendants were alleged to be jointly liable for fraud affecting ownership of a piece of land. 82 U.S. 552, 554–55 (1872). The Court held that a default *judgment* (in contrast to a mere default) could not be entered as to any of the defendants prior to conclusion of the case on the merits, as long as other defendants remained active litigants in the case. The Court explained that, if a judge could "lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the others, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill." *Id.* at 554. In the estimation of the Supreme Court, "[s]uch a state of things [would be] unseemly and absurd, as well as unauthorized by law." *Id.* Instead, the Court held that "[t]he true mode of proceeding where a bill makes a joint charge against several defendants, and one of them makes default, is simply to enter a default and a formal decree *pro confesso* against him, and proceed with the cause upon the answers of

5

the other defendants. ... [I]f the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike-the defaulter as well as the others. If it be decided in the complainant's favor, he will then be entitled to a final decree against all." *Id.*

In the years since *Frow*, the contours of its holding have been explicated with inconsistent results. In particular, courts have disagreed as to when a defaulting defendant or, in some cases, the actively litigating defendants, may benefit from the *Frow* rule, and when they may not.

The Ninth and Eleventh Circuits have held that that the *Frow* rule applies not only in a situation of true joint liability, but also where "defendants ... are similarly situated." *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001); *Garamendi v. Henin*, 683 F.3d 1069, 1082–83 (9th Cir. 2012) (noting that the rule, in the Ninth Circuit, extends beyond "jointly liable co-defendants to those that are 'similarly situated,' such that the case against each rests on the same legal theory"); *Gulf Coast Fans, Inc. v. Midwest Elecs. Importers, Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984) ("[E]ven when defendants are similarly situated, but not jointly liable, judgment should not be entered against a defaulting defendant if the other defendant prevails on the merits."). The Third, Fourth, Fifth, and Tenth Circuits have adopted somewhat similar positions. *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) ("[W]here a defending party establishes that plaintiff has no cause of action ... this defense generally inures also to the benefit of a defaulting defendant.'" (quoting *United States v. Peerless*, 374 F.2d 942, 945 (4th Cir. 1967)); *Wilcox v. Raintree Inns of America, Inc.*, No. 94-1050, 1996 WL 48857, at *3 (3d Cir. Feb. 26, 1996) (mem. disp.) ("The *Frow* rule is also applicable in situations where multiple defendants have closely related defenses."); *Farzetta v. Turner & Newall, Ltd.*, 797 F.2d 151, 154 (3d Cir. 1986) ("[W]e believe that *Frow* stands for the proposition that if at trial facts are proved that

6

exonerate certain defendants and that as a matter of logic preclude the liability of another defendant, the plaintiff should be collaterally estopped from obtaining a judgment against the latter defendant, even though it failed to participate in the proceeding in which the exculpatory facts were proved.").

The Seventh Circuit has held that *Frow* is narrower, and limited to "exclusively joint liability claims or situations where there is a *single res in controversy*." *In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1257 n.40 (7th Cir. 1980) (emphasis added). That Circuit has also held, however, that where the theory of prosecution is joint *and* several liability, a court should not determine the appropriate amount of damages against a defaulting defendant until resolution of the merits as to the actively litigating defendants, so as to avoid inconsistent determinations as to damages amounts for which all defendants might ultimately be jointly liable. *Id.* at 1262 ("Thus, while Westinghouse has secured a valid default judgment as to the defaulters' liability, a damages hearing may not be held until the liability of each defendant has been resolved.").

The contours of the precise rule in the Second Circuit are not entirely clear. In *Republic of China v. American Express Co.*, the Second Circuit determined that an order dismissing all claims between plaintiff and one defendant was not immediately appealable, as the district court had not certified it as final under Rule 54(b). 190 F.2d 334, 340 (2d Cir. 1951). In the process of so concluding, the Court addressed whether such an order might also not be final – and thus not yet appealable – on the ground that that it dismissed only the case against a party "jointly charged." *Id.* at 336 & n.3. The Circuit noted, in the context of that discussion, that *Frow* addressed a circumstance where "the joint element was present," *id.* at 336 n.2, and explained that "[j]ointness'" is present when, *inter alia*, "the asserted liabilities of the defendants, one of whom is dismissed, are very closely interrelated." *Id.* at 336 n.3. The case, in other words,

7

although not engaging with *Frow* in any sustained way, appeared to endorse an understanding of jointness similar to that articulated in the Ninth and Eleventh Circuits.

In *Davis v. Nat'l Mortgagee Corp.*, the Circuit appear to affirm *Frow*'s applicability even after the 1961 amendments to Rule 54(b) (addressing a district court's ability to issue a final judgment as to claims against only some parties in a litigation). *See* 349 F.2d 175, 178 (2d Cir. 1965) (citing *Frow* for the proposition that "[a]s the liability of the defendants would have been joint had any been found, the dismissal of the complaint for lack of proof disposed of the case against all defendants, including the defaulting defendant").

Notwithstanding the dicta in *Republic of China* and the secondary holding of *Davis*, in *International Controls Corporation v. Vesco*, the Second Circuit stated, in a footnote, that it thought it "most unlikely that *Frow* retains any force subsequent to the adoption of Rule 54(b)," and went on to state that "at most, *Frow* controls in situations where the liability of one defendant necessarily depends upon the liability of the others." 535 F.2d 742, 746 n.4 (2d Cir. 1976). On the one hand, *Vesco*'s analysis appears divergent with that in *Republic of China* and *Davis* and to articulate a narrower view of *Frow*. On the other hand, the phrase "necessarily depends upon the liability of the others" is not self-defining, and, in any case, *Vesco* addressed the argument that *Frow* "forb[a]d[e]" entry of final judgment against one defendant while others contested liability, *id.*; it did not indicate that a district court could not, in its discretion, delay entry of default judgment, in particular if it finds that there *is* a "just reason for delay," Fed. R. Civ. P. 54(b).

District courts in this Circuit have not been entirely consistent in their interpretations of these precedents, and of Rule 54(b). Numerous district courts have appeared to adopt a construction of the *Frow* rule potentially (although not obviously) broader than that in *Vesco*.

8

*See Century Sur. Co. v. Whispers Inn Lounge, Inc.*, No. 13 CIV. 9049 (LGS), 2014 WL 8392302, at *1 (S.D.N.Y. Dec. 15, 2014) ("In cases of joint *and several liability*, where a complaint 'makes a joint charge against several defendants,' and only one defendant defaults, courts should not enter 'a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause.'" (quoting *Frow*, 82 U.S. at 554) (emphasis added)); *Hudson v. Universal Pictures Corp.*, No. 03-CV-1008 (FB)(LB), 2004 WL 1205762, at *5 (E.D.N.Y. Apr. 29, 2004), *aff'd sub nom. Hudson v. Imagine Entm't Corp.*, 128 F. App'x 178 (2d Cir. 2005) (summary order) (first finding that the plaintiff's copyright claim against the defendants was meritless as the intellectual property in question did not violate the plaintiff's copyright, and then finding that default judgment could not issue against one of the defendants as "[t]o allow [the plaintiff] to recover a default judgment against one defendant when claims against similarly situated co-defendants have been found to be meritless would be 'unseemly and absurd, as well as unauthorized by law.'" (quoting *Diarama Trading Co., Inc. v. J. Walter Thompson USA, Inc.*, No. 01 Civ. 2950 (DAB), 2002 WL 31545845, at *3 (S.D.N.Y. 2002)); *see also id.* ("There is nothing in [plaintiff's] complaint to indicate that Meyer's liability would hinge on some fact not applicable to any other defendant in this action."); *Diarama Trading Co. Inc*, 2002 WL 31545845, at *4 ("[D]ecisions in this Circuit subsequent to *Vesco* support extension of *Frow* to cases in which defendants are merely 'similarly situated.'"); *id.* (relying on Rule 54(b) and noting that "good cause" did not exist to enter final judgment).  Other cases have held that a district court should enter a default judgment as to liability when the complaint alleges anything short of true joint liability, but, in keeping with the Seventh Circuit, should not calculate damages or enter a final judgment if the complaint alleges joint and several liability. *See, e.g., Lite-Up Corp. v. Sony Music Entm't, Inc.*, No. 97 CIV. 1546 (KTD)(MHD), 1999 WL 436563, at

*2 (S.D.N.Y. June 24, 1999) (citing *Vesco* for the proposition that "[i]f the liability sought to be imposed is joint and several rather than joint, … courts have held that the rationale of *Frow* does not directly apply, since it would not be inconsistent to hold some but not all defendants liable," but that "[n]onetheless, even if the liability is joint and several and thus a default judgment may be entered, it is appropriate to enter judgment solely as to liability and not as to the amount of damages to be assessed against the defaulting party, since a separate determination of damages would pose the prospect of inconsistent judgments"); *see also Economist's Advocate, LLC v. Cognitive Arts Corp.*, No. 01 CIV.9486 (RWS), 2004 WL 2650906, at *4 (S.D.N.Y. Nov. 22, 2004) ("To the extent the rule announced by *Frow* affects entry of default judgment as to one defendant prior to a determination on the merits as to the remaining defendants, it has been limited by many courts to those instances where the liability of the defendants is joint.").

In short, there remains some disagreement in this Circuit as to whether, when defendants are similarly situated as to a claim or legal defense but true joint liability is not alleged, the Court should, and may, enter a default judgment as to liability against one defendant when active litigants remain.

There is no need to explicate the exact contours of the rule in this case. That is because, notwithstanding disagreement in these cases as to the precise reach of *Frow*, courts in this Circuit and elsewhere have been near-uniform as to two principles that, together, are dispositive as to the Plaintiffs' motion.

First, default judgment cannot be issued where the relief requested would prejudice actively litigating defendants. *See Lite-Up Corp.*, 1999 WL 436563, at *2 (noting that, even under a narrow understanding of *Frow*, "it prohibits entry of a default judgment 'against one of several defendants when[ *inter alia*,] … the nature of the relief demanded is such that, in order to

be effective, it must be granted against each and every defendant.'" (quoting 10 J. Moore, et al.,

*Moore's Federal Practice* § 55.25 at 55–45 to 46 (3d ed. 1999)); *see also Shenzhenshi*

*Haitiecheng Sci. & Tech. Co. v. Rearden LLC*, No. 15-CV-00797 (JST), 2016 WL 5930289, at

*11 (N.D. Cal. Oct. 11, 2016) ("Based on *Frow*, '[i]t has long been established that, where there

are several defendants, the transgressions of one defaulting party should not ordinarily lead to the

entry of a final judgment, *let alone a judgment fatal to the interests of other parties*.'" (quoting

*Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1189-90 (9th Cir. 2009) (emphasis added));

*Aspen Ins. UK Ltd.*, 2013 WL 10897793, at *1 ("The Court cannot grant the default judgment

requested by Plaintiff; doing so would prejudice the rights of the Marzan Estate, which has

properly appeared in this action and potentially lead to inconsistent results."); *Hand Picked*

*Selections, Inc. v. Handpicked Wines Int'l Pty, Ltd.*, No. CV 06-0356 (FB)(JO), 2006 WL

1720442, at *4 (E.D.N.Y. June 22, 2006) ("A party cannot use a default judgment issued against

one adversary collaterally against another. . . . Instead, Selections should seek a default and a

decree *pro confesso* against AM while proceeding with the action on the merits against Wines.

To the extent that procedure creates a risk of inconsistent results, that risk can be obviated by

withholding judgment against AM until the action is resolved with respect to Wines." (internal

citation omitted)); *Friedman v. Lawrence*, No. 90 CIV. 5584 (VLB), 1991 WL 206308, at *4

(S.D.N.Y. Oct. 2, 1991) (noting that the "alternative basis for the *Frow* holding" was "that relief

against some of the defendants would adversely affect all defendants"); *cf. S.E.C. v. Sky Way*

*Glob., LLC*, 710 F. Supp. 2d 1274, 1286 (M.D. Fla. 2010) ("Each of the four individuals

defending against this action is within the scope of the obey-the-law injunction as fortified by

Rule 65(d)(2), which creates an onerous circumstance in which an actively litigating defendant is

subject to the sanctions visited upon a defaulting corporate defendant even though the individual defendant persists in his defense.").

Second, where Plaintiffs' theory is at least joint and several liability (if not true joint liability), a court should not enter final judgment as to damages until after conclusion of the merits-phase of the proceedings against the actively litigating defendants. *See Lite-Up Corp.*, 1999 WL 436563, at *2 (citing *In re Uranium Antitrust Litig.*, 617 F.2d at 1261-63).

As noted, the Complaint in this case alleges joint ownership by the Defendants of the website <feyonceshop.com> and makes no attempt to delineate the culpability of any of the specific Defendants from that of the others. More significantly, the primary form of relief requested is an injunction that would apply to and prejudice the actively litigating Defendants. And the secondary form of relief is damages in the way of attorney's fees, including sums for which the Individual Defendants may ultimately be jointly liable.

Under these circumstances, the Court finds that it would not be proper to grant the requested default judgment at this time. The motion for default judgment is denied without prejudice, with leave to refile after resolution of the claims against the actively litigating defendants.

## II.     Motion to Dismiss for Lack of Venue or to Transfer the Case

The Court next addresses the Individual Defendants' (hereafter "Defendants") motion to dismiss this case for lack of venue, or, in the alternative, transfer this case to the Western District of Texas. *See* Dkt. No. 60 (hereafter "Def. Mot."). The Court holds that the motion to dismiss is procedurally improper, and that the Defendants, although *pro se*, have failed to sustain their "burden of making out a strong case for transfer" under § 1404(a). *New York Marine & Gen.*

*Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) (internal quotation marks omitted).

## A. Background

The Court assumes familiarity with the procedural history recited in Part I, and adds only those details relevant to the motion to transfer.

In their Complaint, as noted, the Plaintiffs allege various causes of action stemming from the Defendants' allegedly willful use of the mark Feyoncé, which Plaintiffs assert violates their rights in the mark, Beyoncé. *See, e.g.*, Complaint ¶ 8. Of relevance to the instant motions, the Complaint alleges that Ms. Knowles-Carter is a citizen and resident of the State of New York, *id.* ¶ 10, as well as "arguably one of the most famous musical artists and entrepreneurs in the world," *id.* ¶ 1. It further alleges that BGK Trademark Holdings, LLC has its principal place of business in New York, New York, *id.* ¶ 11, that Andre Maurice lives at 134 Paramount Avenue, San Antonio, Texas, *id.* ¶ 12, that Leana Lopez lives at 1210 North Hunt Lane, Apt. No. 20202, San Antonio, Texas, *id.* ¶ 13, and that Feyonce Inc. "is a fictitious company" with its principal place of business at Ms. Lopez's residence, *id.* ¶ 15. The Complaint also alleges that "[t]his Court has personal jurisdiction over Defendants because, upon information and belief, Defendants are doing business in New York, contracted to supply goods or services in New York, the claims at issue arise out of their transaction of business and/or supplying goods and services directed to consumers residing in New York, and/or Defendants have committed infringing acts outside of New York causing injury to Plaintiffs in New York and/or Defendants regularly do or solicit business in New York and/or derive substantial revenue from goods used or services rendered in New York and/or expect or reasonably should expect their infringing conduct to have consequences in New York and derive substantial revenue from interstate

commerce." *Id.* ¶ 17. As to venue, the Complaint states that "[v]enue is proper in this District

pursuant to 28 U.S.C. § 1391 because all Defendants are subject to personal jurisdiction in this

District because they are transacting business and committing tortious acts within the State of

New York and this District." *Id.* ¶ 18.

On July 14, 2016, the Defendants filed an answer. Dkt. No. 33 ("Answer"). In their

Answer, they assert, as an affirmative defense, that venue is improper in the Southern District of

New York. *Id.* at 37.[3] The Defendants did not file a motion to dismiss for lack of venue,

however, prior to or in lieu of filing their Answer.

On October 28, 2016, the Defendants filed the instant motion to dismiss or transfer. *See*

Def. Mot. In that motion, they make two arguments. First, they argue that venue is not proper in

the Southern District of New York, and that the case must either be dismissed for lack of venue

or transferred pursuant to 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a

case laying venue in the wrong division or district shall dismiss, or if it be in the interest of

justice, transfer such case to any district or division in which it could have been brought."). *See*

*id.* at 4-5. As support for this argument, the Defendants cite to a piece of evidence Plaintiffs

purportedly produced to Defendants indicating that, in March 2016, Leanna Lopez mailed a

Feyoncé-branded item to a customer living in New York, New York. *See* Dkt. No. 62, Ex. A.

The Defendants argue that this evidence is insufficient to establish venue as it was sent solely by

Ms. Lopez, "prior to the [c]reation of Feyonce Incorporated." Def. Mot. at 4; *see also id.*

("Feyonce Incorporated and Andre Maurice ha[ve] not given rise to the claim occurred in the

Southern District of New York finding venue improper because Plaintiffs' failed to identify 'any

allegedly wrongful act or omission by Defendants' that occurred during the time Feyonce, Inc.

---

[3] They do not assert the defense that personal jurisdiction does not exist. *See generally* Answer.

was an active entity (sic).'"").  In the alternative to dismissing or transferring the case for lack of

venue in the Southern District, the Defendants seek a discretionary transfer under 28 U.S.C. §

1404(a).  *Id.* at 5.  In support of this argument, the Defendants assert, generally, that the

"Western District of Texas would be a far more convenient venue for this case," but add no

additional analysis.  *Id.*  The Defendants attached no affidavits or other evidence to their initial

motion.  *See generally* Dkt. No. 60.

      The Plaintiffs filed their opposition on November 11, 2016.  Dkt. No. 61 (hereafter "Pl.

Opp.").  In that opposition, Plaintiffs argue that they sufficiently alleged that venue is proper, *see

id.* at 5, and that transfer is not warranted under § 1404(a), *see generally id*.  Plaintiffs also

attached, as an exhibit, the evidence cited by Defendants: a screenshot of a package sent on

March 28, 2016 (a week before the Complaint was filed in this case), bearing Leanna Lopez's

name and return address and mailed to New York, New York, containing Feyoncé-branded

merchandise.  *See* Dkt. No. 62, Ex. A.

      In their reply brief, the Defendants for the first time made several arguments why transfer

in this case is appropriate.  *See* Dkt. No. 69 ("Reply").  They argued that the Western District of

Texas is a more appropriate forum because the Feyoncé mark was designed, created, and

registered in the Western District of Texas, that "Plaintiff's Beyonce mark was originally applied

for in the State of Texas[, w]hich would make it convenient for Plaintiffs' since Plaintiff is a

Texas Native," that Andre Maurice "did not conduct business in New York," that Feyonce Inc.

was not formed until April 29, 2016, and "has not done business in New York," and that

Defendants cannot get an attorney in New York because "[e]ach attorney Defendants[] have

contacted [in New York is] bias[ed] toward the Plaintiffs[, and t]he attorneys in San Antonio do

not want to take a case that is located in New York."  *Id.* at 1.  As to the motion to dismiss, the

Defendants argued that the evidence proffered by the Plaintiffs does not establish that Feyonce Inc. or Andre Maurice ever conducted business in New York, as the package was dated March 28, 2016, but Feyonce, Inc. was not an active business until April 29, 2016, and Andre Maurice was not an "active partner" until April 8, 2016. *Id.* at 2. In support of these last contentions, the Defendants provided a certificate of filing from the Texas Secretary of State for Feyonce, Inc., dated April 29, 2016, Reply, Ex. A, and a partnership agreement between Lopez and Maurice, dated April 8, 2016, Reply, Ex. B. They submitted no additional evidence or affidavits.

Discovery in this case closed on December 30, 2016. Dkt. No. 65. On April 21, 2017, the Court stayed summary judgment briefing pending the resolution of the motion for default judgment. Dkt. No. 74.[4]

### B.  Legal Standard

### 1.  Motion to Dismiss for Lack of Venue

A party may challenge the sufficiency of venue in the plaintiff's chosen forum in one of three ways. First, a defendant may file "a timely motion under [Fed. R. Civ. P.] Rule 12(b)." *Tyco Int'l Ltd. v. Walsh*, No. 02 CIV. 4633 (DLC), 2003 WL 553580, at *2 (S.D.N.Y. Feb. 27, 2003) (citing *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). "A motion [to dismiss for lack of venue] must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b); *see also Tyco Int'l Ltd.*, 2003 WL 553580, at *2. Such a motion is therefore "untimely when it is served after the answer." *Id.* Second, a defendant may

---

[4] As noted, the Individual Defendants purport to make their motion to dismiss or transfer on behalf of the Corporate Defendant, and make arguments on its behalf. *See* Def. Mot. Because the Clerk has entered a default against the Corporate Defendant, "[t]he defaulting defendant has … lost [its] standing in court [and] … will not be entitled to service of notices in the cause, nor to appear in it in any way. [It] can adduce no evidence, [and it] cannot be heard at the final hearing." *Frow*, 82 U.S. at 554. The Court thus assesses arguments made on behalf of the Corporate Defendant only to the degree that such arguments are relevant to whether the Individual Defendants have met their burden of showing the case should be transferred.

challenge venue in a motion for summary judgment, under Federal Rule of Civil Procedure 56. *See id.* (citing *Ball*, 902 F.2d at 197-98). Finally, a defendant may "request ... an adjudication of disputed jurisdictional facts, either at a [pre-trial] hearing pursuant to [Federal Rule of Civil Procedure 12(i)][5] ..., or in the course of a trial on the merits." *Id.* (citing *Ball*, 902 F.2d at 197); *see also* Fed. R. Civ. P. 12(i) ("If a party so moves, any defense listed in Rule 12(b)(1)-(7) – whether made in a pleading or by motion – and a motion under Rule 12(c) must be heard and decided before trial unless the court orders a deferral until trial.").

The degree and nature of proof required to establish venue is different at each stage of a civil proceeding. When a defendant moves to dismiss for lack of venue under Rule 12(b)(3), the court "assumes the truth of the plaintiff's factual allegations for purposes of the motion and challenges their sufficiency." *Ball*, 902 F.2d at 197 (iterating this rule in the analogous circumstance of a challenge to the court's personal jurisdiction); *see also Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005) ("If the court chooses to rely on pleadings and affidavits, the plaintiff need only make a *prima facie* showing of [venue]." (quoting *CutCo Indus. v. Naughton,* 806 F.2d 361, 364–65 (2d Cir. 1986)). If the issue is decided in the context of a Rule 56 motion, the question is whether the undisputed facts establish that venue is improperly laid. *Ball*, 902 F.2d at 197. Finally, if a Court conducts an evidentiary hearing, "the plaintiff must demonstrate [venue] by a preponderance of the evidence." *Cutco Indus., Inc.*, 806 F.2d at 364. Under Rule 12(i), "a district court judge [has] broad discretion ... to hear and decide [a] motion [to dismiss for lack of venue] before trial or to defer the matter until trial. The district court may conduct such a hearing based solely upon papers or by a proceeding in which evidence is taken. Because the federal rules provide no statutorily prescribed course, the district

---

[5] The court referred, here, to Rule 12(d) – the then-version of Rule 12(i).

17

court is free to decide the best way to deal with this question, and its choice may be set aside on appeal only upon a finding of an abuse of discretion." *Id.*

Should a district court conclude a plaintiff has failed to establish venue, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C.A. § 1406 (a).

### 2. Motion to Transfer Under § 1404(a)

In contrast to a motion to transfer relying on § 1406 (a), a motion to transfer under § 1404(a) is not predicated on the non-existence of venue in the plaintiff's chosen forum. *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 579 (2013) ("Unlike § 1406(a), § 1404(a) does not condition transfer on the initial forum's being 'wrong.'"). Instead, 28 U.S.C. § 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *See also N.Y. Marine*, 599 F.3d at 112.

§ 1404(a) contemplates a two-step inquiry when a party moves to transfer a case. First, the Court must determine whether the prospective forum is one in which the action "might have been brought." § 1404(a). No party contests that the Western District of Texas satisfies this requirement.

Second, if the transferee forum meets the requirements at the first step, a court must determine whether to exercise its discretion to effect the transfer. In engaging in this discretionary inquiry, a court may consider the following non-exhaustive set of factors:

> the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience

18

of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

*N.Y. Marine*, 599 F.3d at 112 (internal quotation marks and citation omitted). A court may also weigh "the forum's familiarity with the governing law and trial efficiency and the interest of justice, based on the totality of the circumstances." *Children's Network, LLC v. PixFusion LLC*, 722 F. Supp. 2d 404, 409 (S.D.N.Y. 2010) (internal quotation marks omitted). "No one factor is dispositive and the relative weight of each factor depends on the particular circumstances of the case." *Smart Skins LLC v. Microsoft Corp.*, No. 14-CV-10149 (CM), 2015 WL 1499843, at *4 (S.D.N.Y. Mar. 27, 2015). Crucially, "[t]he movant bears the burden of establishing, by 'clear and convincing evidence,' that a transfer of venue is warranted." *Children's Network*, 722 F. Supp. 2d at 409; *see also N.Y. Marine*, 599 F.3d at 114 (first noting that "the party requesting transfer carries the 'burden of making out a strong case for transfer,'" and then stating that "[i]t is therefore appropriate that the district courts in our Circuit have consistently applied the clear and convincing evidence standard in determining whether to exercise discretion to grant a transfer motion" (quoting *Filmline (Cross–Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 521 (2d Cir. 1989)).

In resolving a motion for transfer, the Court assumes allegations in the Complaint to be true, but may also look to evidence outside of the Complaint, even to the degree that such evidence contradicts allegations in the Complaint. *Tlapanco v. Elges*, 207 F. Supp. 3d 324, 326 n.2 (S.D.N.Y. 2016); *DiPizio v. Empire State Dev. Corp.*, No. 1:15-CV-5339 (GHW), 2015 WL 5824704, at *1 n.1 (S.D.N.Y. Oct. 5, 2015); *Andrade v. Chase Home Fin., LLC*, No. 04 C 8229, 2005 WL 3436400, at *2 (N.D. Ill. Dec. 12, 2005) ("When deciding a motion to transfer venue, the court must accept as true all of plaintiff's well-pleaded facts in the complaint, unless they are contradicted by affidavits or other appropriate evidence from the defendant.").

Finally, the Court must "liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (internal citation and quotation marks omitted). The Court's latitude for pro se litigants is not, however, boundless. The Second Circuit has made clear that "*pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them." *Caidor v. Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008) (internal quotation marks omitted). And such litigants, as with any litigant, waive arguments made for the first time in a reply brief. *See Dee Farmer v. United States,* No. 12-CR-758, 15-cv-6287 (AJN), 2017 WL 3448014, at *3 (S.D.N.Y. Aug. 10, 2017) (collecting cases for the proposition that "[c]ourts have repeatedly held that arguments raised for the first time in reply briefs are waived, and courts have routinely applied this rule to *pro se* litigants"); *United States v. Martinez*, 475 F. Supp. 2d 154, 167 (D. Conn. 2007) (noting that "a reply brief containing new theories deprives the respondent of an opportunity to brief those new issues." (quoting *Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998)).

### C. Discussion

The Court first addresses the Defendants' motion to dismiss or transfer under § 1406(a), and second, addresses their motion to transfer under § 1404(a). Both motions are denied.

### 1. Motion to Dismiss

The Defendants argue, first, that the Court must dismiss this case for lack of venue, or transfer it pursuant to § 1406(a). Def. Mot. at 1. The Defendants' primary argument turns on their interpretation of a single piece of evidence proffered by the Plaintiffs to establish venue: a package, mailed to this district on March 28, 2016, containing Feyoncé merchandise. *See* Dkt.

No. 62, Ex. A. The Defendants argue that Andre Maurice was not yet a part of the Feyonce

enterprise at the time that this package was mailed and had nothing to do with marketing or

selling any Feyonce products to this district, and thus that venue is improperly laid. As support

for this factual conclusion, they note that the package's return address is "Leana Lopez, 1210

Hunt Ln. Apt. 20202, San Antonio, Tx, 78251" – and that the package does not mention Mr.

Maurice. *Id.* They also present to the Court a certificate of filing for Feyonce Inc. dated April

29, 2016 (indicating that the corporate defendant did not exist yet at the time the package was

mailed), *see* Reply, Ex. A, and a partnership agreement between Ms. Lopez and Mr. Maurice,

dated April 8, 2016, Reply, Ex. B.

As an initial matter, the basic evidentiary argument that the Defendants make (putting

aside whether it has any legal relevance to the venue inquiry) – that the piece of evidence shows

only that Leana Lopez, and not Mr. Maurice, mailed a purportedly infringing product to the

Southern District of New York – is belied by publicly available information. The Defendants

have essentially argued that Mr. Maurice did not participate in the production, marketing, or

promotion of the Feyoncé mark until after March 28, 2016 – such that proof that a Feyoncé

product was sold to a customer in this district in March 2016 would not be attributable to him.

But public records indicate that Mr. Maurice applied to the United States Patent and Trademark

Office ("USPTO") on two occasions for ownership of the Feyoncé mark for use with various

products, including clothes and coffee mugs, first on November 25, 2015, and second, on

November 30, 2015. *See* Trademark/Service Mark Application 86/831,410 (USPTO Nov. 25,

2015), available at http://tsdr.uspto.gov/; Trademark/Service Mark Application 86/834,686

(USPTO Nov. 30, 2015), available at http://tsdr.uspto.gov/. The Court may take judicial notice

of these applications, which are part of the USPTO public record. *See Rockland Exposition, Inc.*

*v. All. of Auto. Serv. Providers of New Jersey*, 894 F. Supp. 2d 288, 301 n.6 (S.D.N.Y. 2012) (collecting cases for this proposition). Such evidence undercuts the argument that Mr. Maurice was not part of the activity alleged in the Complaint – the collective use and marketing of the Feyoncé mark – prior to April 8, 2016, when he signed a partnership agreement with Ms. Lopez. By extension, it subverts the Defendants' factual argument: that the proffered evidence does not indicate that Mr. Maurice and Ms. Lopez sold at least one allegedly-infringing product to the Southern District of New York prior to the filing of the Complaint in this case as part of that collective enterprise.

In any event, the Court need not determine whether this proffered evidence is indeed sufficient to establish venue in this District at this juncture. That is because the Defendants' motion to dismiss or transfer pursuant to § 1406(a) is procedurally improper at this time. The Defendants do not indicate the rule pursuant to which they purport to move to dismiss this action for lack of venue. If Rule 12(b)(3), the motion would be untimely. The Defendants filed an answer in this case on July 14, 2016. *See* Answer. Although they contested venue in that Answer, they did not file a motion to dismiss for lack of venue prior to filing that Answer. As such, the time to file a 12(b)(3) motion has passed. *See Tyco Int'l Ltd.*, 2003 WL 553580, at *2.[6]

---

[6] Had the Defendants timely filed a motion to dismiss under Rule 12(b)(3), there is no question that the allegations in the complaint are indeed sufficient to overcome such a motion. The Complaint alleges that "Defendants are doing business in New York, contracted to supply goods or services in New York, the claims at issue arise out of their transaction of business and/or supplying goods and services directed to consumers residing in New York, and/or Defendants have committed infringing acts outside of New York causing injury to Plaintiffs in New York and/or Defendants regularly do or solicit business in New York and/or derive substantial revenue from goods used or services rendered in New York and/or expect or reasonably should expect their infringing conduct to have consequences in New York and derive substantial revenue from interstate commerce." Complaint ¶ 17. In a trademark case, such allegations are sufficient to make out a "prima facia showing of [venue]," *Gulf Ins. Co.*, 417 F.3d at 355 (internal quotation marks omitted). *See Grand v. Schwarz*, No. 15-CV-8779 (KMW), 2016 WL 2733133, at *4 (S.D.N.Y. May 10, 2016) ("[I]n trademark infringement actions, venue is appropriate in every jurisdiction where an alleged infringement occurred. Because Plaintiff has alleged that Defendant targeted New York by distributing flyers, inviting potential customers to visit her website, and conducting a training session in Manhattan, New York in September 2014, venue is proper in this district."); *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 182 (S.D.N.Y. 1995) ("[I]n trademark infringement claims, courts have held that venue may be proper in each jurisdiction where infringement is properly alleged to have occurred."); *id.* ("[I]f a defendant targets the

On the other hand, it is possible that the Defendants seek to bring their motion pursuant to Rule 56 (summary judgment) or Rule 12(i) (allowing a party to request a hearing to resolve the existence of venue prior to trial). As noted, the Defendants do not address the sufficiency of the allegations in the Complaint as to venue in their motion, but instead argue that the Plaintiffs' proffered evidence – a screenshot of a single sale – is insufficient to establish venue. This argument suggests that they do not intend to move to dismiss under 12(b)(3), for which the Court would assume the allegations in the Complaint to be true, *see Ball*, 902 F.2d at 197, but are arguing that the evidence presented is insufficient to establish venue. To the degree the Defendants seek to challenge the *evidence* in this case establishing venue, however, their motion, filed on October 28, 2016, is premature. Fact discovery in this case did not close until December 30, 2016. Dkt. No. 65. As late as November 22, 2016, the record establishes that Defendants had not provided to the Plaintiffs evidence that could be relevant to establishing venue. *See id.* ("As discussed at today's telephone conference, defendants are directed to produce copies of all invoices and/or sales receipts reflecting sales of Feyonce, Inc. products by November 30, 2016."). Even were the Plaintiffs' evidentiary proffer insufficient to establish venue on its own, then, it would be improper for the Court to make a venue determination based solely on that evidence. *See Tyco, Ltd.*, 2003 WL 553580, at *2 ("The defendant has not requested that his motion be converted to a Rule 12[(i)] motion. Even if he had, that request would be premature given the plaintiff's request for discovery."). Instead, the Defendants – if they seek to challenge the sufficiency of the evidence establishing venue – may make that argument in the context of a

---

District by advertising and actively pursues efforts to market the product by making sales presentations and selling even a relatively nominal amount of products in the District, such actions may be regarded as constituting a substantial part of events giving rise to the claim." (quoting *French Transit, Ltd. v. Modern Coupon Systems, Inc.*, 858 F. Supp. 22, 26 (S.D.N.Y. 1994)).

summary judgment motion, or they may move, pursuant to Rule 12(i), now that discovery has closed, for an evidentiary hearing to determine whether venue is properly laid.

In short, the Court denies the motion to dismiss for lack of venue or transfer under § 1406(a).

### 2. The Motion to Transfer Under § 1404(a)

Turning to the motion to transfer under § 1404(a), the Court finds that – although the Defendants are *pro se* and thus subject to a more generous interpretation of their pleadings – they have not met their "burden of making out a strong case for transfer" and supporting that case with "clear and convincing evidence." *New York Marine*, 599 F.3d at 113–14 (internal quotation marks omitted). The Court addresses the relevant factors as follows.

The first factor, the Plaintiffs' choice of forum, weighs against transfer. A plaintiff's decision to file an action in a particular forum is generally "entitled to great deference." *Chen v. Arts Nail Putnam Valley Inc.*, No. 1:14-CV-03037 (ALC), 2017 WL 3017712, at *3 (S.D.N.Y. July 14, 2017). Courts have held, however, that this choice is afforded less deference when a Plaintiff's chosen forum is "neither their home nor the place where the operative facts of the action occurred." *Id.* (quoting *Dwyer v. Gen. Motors Corp.,* 853 F. Supp. 690, 694 (S.D.N.Y. 1994)). Here, the Complaint alleges that Plaintiff BGK Trademark Holdings, LLC has its principal place of business in New York, New York, and that Ms. Knowles-Carter is a citizen and resident of the State of New York. Complaint ¶¶ 10-11. Even assuming the operative facts did not occur in New York, then, the Plaintiffs' choice of forum would warrant some deference.

The second factor, the convenience of witnesses, does not favor transfer. "The convenience of the witnesses has been held to be the most important factor in considering whether to transfer a case under § 1404(a)." *CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 22 (S.D.N.Y. 2012). Further, "[t]he Court weighs more heavily the convenience of non-party

witnesses than party witnesses in conducting this analysis." *Id.* In this case, the Defendants make no argument as to where witnesses are located in their initial *or* reply briefs. Putting aside general rules of waiver, courts have held, as to this specific factor in the transfer analysis, that "[a]s a rule, a party seeking a transfer must provide the Court with a specific list of the probable witnesses who will be inconvenienced if required to testify in the present forum." *Id.* The Defendants have thus not met their burden of establishing that this factor favors transfer. *See Pilates, Inc.*, 891 F. Supp. at 183 (noting, although with counseled parties, that "Defendants have submitted no such information, and thus it is impossible for the court to conclude that this important factor weighs in favor of transfer"). Similarly, the Defendants have made no showing that there will be any difficulty compelling the attendance of witnesses in the Southern District of New York.

The next factor, the location of relevant documents and relative ease of access to sources of proof, "is not an important consideration in the age of instantaneous electronic communication and overnight shipping." *Akers Biosciences, Inc. v. Martin*, No. 14-cv-8241 (AJN), 2015 WL 1054971, at *6 (S.D.N.Y. 2015).

In contrast, the convenience and relative means of the parties can be a significant factor in the transfer analysis. The Court finds, based on the evidence and arguments actually presented to the Court by the Defendants, that this factor is neutral. Courts have weighed heavily evidence that "there is a significant financial disparity between the parties." *Chen*, 2017 WL 3017712, at *4 (quoting *AGCS Marine Ins. Co. v. Ass. Gas & Oil Co., Ltd.,* 775 F. Supp. 2d 640, 648 (S.D.N.Y. 2011)). Courts have also found that disparities in the parties' means, coupled with evidence of inconvenience to the comparatively less-well-off party – can be dispositive in a transfer analysis. *See Big Score Entm't, LLC v. Chriswell*, No. 3:10-CV-1993 (CSH), 2012 WL

6628874, at *4 (D. Conn. Dec. 19, 2012) (noting that, where defendant was "in school in Illinois, … a caregiver for an 80 year old dialysis patient whom she transport[ed] to and from dialysis 3 times per week in Illinois[,] … unemployed and receiving social support from governmental agencies, family and friends" and otherwise indigent, and Plaintiff was "one of the most successful independent record companies in the world," transfer to Illinois was warranted). Nevertheless, although there is no question that there is a financial disparity in this case, the Defendants make no particularized argument that litigating in the Southern District of New York will or has presented a hardship to them in their opening brief, *see generally* Def. Mot.  Such argument is therefore waived. *See Dee Farmer*, 2017 WL 3448014, at *3 ("Courts have repeatedly held that arguments raised for the first time in reply briefs are waived, and courts have routinely applied this rule to *pro se* litigants" (alteration omitted)).

Even if the Court were to consider arguments made for the first time in the Defendants' Reply brief, those arguments would not alter the analysis.  The Defendants do not argue that they are indigent or otherwise cannot afford to litigate the case here; instead, they claim that they are "unable to obtain an attorney in New York [because e]ach attorney [they] have contacted [is] bias[ed] toward the Plaintiffs[]," and "[t]he attorneys in San Antonio do not want to take a case that is located in New York."  Reply at 1.  The Defendants do not support these assertions with any evidence or affidavits.  Although it is certain that the Plaintiffs are far wealthier than the Defendants, it is far less plausible that attorneys in New York are unwilling to represent the Defendants because of a New York-wide, institutional bias against the Defendants and in favor of Beyoncé Knowles-Carter.  Absent any evidence supporting such an assertion, it is not enough to meet the Defendants' burden of showing this factor favors transfer.  Finally, the Court observes that, as the Plaintiffs point out, there are ways to mitigate the burden to the Defendants

of litigating this case in New York. *See* Pl. Opp. at 5 (observing that "Defendants were able to participate in a conference call before Magistrate Judge Cott concerning Defendants' failure to respond to discovery requests."). The Defendants, then, have not met their burden of showing that this factor weighs strongly in favor of transfer.

Turning to the locus of operative facts, the Court finds this factor neutral. On the one hand, it is "[a]n oft-repeated rule in cases of trademark infringement, dilution, or unfair competition, … that the locus of operative facts is the initially chosen forum if acts of infringement, dilution, or unfair competition occurred in that forum," and there is no question that the Plaintiffs have alleged such acts occurred in the Southern District of New York. *CYI, Inc.*, 913 F. Supp. 2d at 19. That said, "in cases where sales have occurred in multiple districts, courts have reached disparate results as to where the locus of operative facts lies." *Id.* at 20. Further, where allegedly infringing products are "design[ed] and develop[ed]" may be relevant to the locus of operative facts, especially where there is an allegation of "willfulness" in the complaint. *Id.* at 21.

On the one hand, several facts in this case suggest that this factor favors the Western District of Texas. The Complaint does not allege that the Defendants only sold and marketed products to the Southern District of New York. *See generally* Complaint. Further, the Complaint repeatedly alleges that the Defendants infringed the Plaintiffs' mark willfully. *See, e.g.*, Complaint ¶ 40. The Defendants point out, although in their reply brief, that "[t]he Feyonce mark was designed, created, and registered by the Defendants' in [the] Western District of Texas," and the Court sees no reason to doubt this assertion. Reply at 1.

On the other hand, the Defendants have introduced no sales data or other information that might demonstrate that sales were relatively infrequent in the Southern District of New York as

compared with other districts. Although the Defendants are *pro se*, such facts would be uniquely within their purview to present to the Court, given that their motion was made prior to the close of discovery. Because the Defendants bear the burden to demonstrate that transfer is warranted, the Court thus finds that this factor is either neutral or tips slightly in favor of the Defendants.

Finally, the Court finds that "trial efficiency and the interest of justice" militate strongly against transfer. *Children's Network, LLC*, 722 F. Supp. 2d at 409 (internal quotation marks omitted). Discovery is complete in this case, and the deadline for motions for summary judgment has been stayed pending resolution of the motion for default judgment the Court herein resolves. *See* Dkt. No. 74. Transferring this case at this juncture would require another court, unfamiliar with the proceedings, to adjudicate potential motions for summary judgment (and any other motions going forward), and would add little convenience for the Defendants, who have already had to engage in completed discovery proceedings in this District. *Cf. Friedland v. Holiday Inns, Inc.,* No. 88 CIV. 7857 (PKL), 1989 WL 101942, at *2 (S.D.N.Y. Aug. 30, 1989) ("The instant action is nine months old and rapidly approaching trial ready status. Accordingly, considerations of judicial economy and efficiency clearly militate against transfer."); *accord Leif Hoegh & Co. v. Alpha Motor Ways, Inc.*, 534 F. Supp. 624, 626 (S.D.N.Y. 1982).

In sum, and weighing the above factors, the Court finds that the Defendants have not met their burden of "making out a strong case for transfer." *New York Marine*, 599 F.3d at 114 (internal quotation marks omitted). The Court is sensitive to the potential for a wealthy plaintiff to gain a strategic advantage over poorer defendants by filing a claim in a remote forum. Nevertheless, assessing the actual arguments the Defendants have made, and considering all of the equitable factors above, transfer is not warranted in this case.

### III.   Conclusion

In conclusion, the Court denies the motion for default judgment without prejudice, and denies the motion to dismiss or, in the alternative, transfer in its entirety.  This resolves docket numbers 55 and 60.

The parties will notify the Court on or before October 6 whether they intend to move for summary judgment.  Such motions, if filed, will be due on or before October 20, 2017.

SO ORDERED.

Dated: September 23, 2017
New York, New York

_____
ALISON J. NATHAN
United States District Judge