USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 3 0 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Beyoncé Giselle Knowles-Carter, et al.,

Plaintiff,

—v—

Feyonce, Inc. et al.,

Defendants.

16-CV-2532 (AJN)

MEMORANDUM OPINION
AND ORDER

ALISON J. NATHAN, District Judge:

Plaintiffs Beyoncé Giselle Knowles-Carter and BGK Trademark Holdings, LLC bring this action against Feyoncé Inc., Lee Lee, and individual Defendants Andre Maurice and Leanna Lopez, alleging trademark infringement and dilution, unfair competition, and unjust enrichment associated with the sale of merchandise using the brand name "Feyoncé," which Defendants market to the engaged to be married—i.e., fiancés. Before the Court is Plaintiffs' motion for partial summary judgment and entry of a permanent injunction against Defendants Andre Maurice and Leana Lopez.

There can be no dispute that in marketing to fiancé purchasers, defendants chose the formation "FEYONCÉ" in order to capitalize off of the exceedingly famous BEYONCÉ mark. But that alone does not establish likelihood of confusion. Rather, a critical question is whether a rational consumer would mistakenly believe FEYONCÉ products are sponsored by or affiliated with BEYONCÉ products. A rational jury might or might not conclude that the pun here is sufficient to dispel any confusion among the purchasing public. Thus, there is a genuine dispute of material fact that requires denial of the motion for summary judgment.

1

## I. Background

### A. Factual Background

The following facts are undisputed except where specifically noted.[1] Plaintiff Beyoncé Knowles-Carter ("Beyoncé") is a world-renowned music artist who is among the best known figures in entertainment. As such, the Court need not recount the details of her celebrity here. Plaintiff BGK Trademark Holdings, LLC ("BGK"), is the owner of the federally registered trademark BEYONCÉ, which was entered on the Principal Register of the United States Patent and Trademark office ("USPTO") on August 31, 2004, as Registration No. 2,879,852. Putnam Decl., Ex. 2 at 12.[2] The registration includes Class 25: "Clothing: namely – shirts, sweaters, blouses, jackets, slacks, hats and caps." *Id.* Plaintiffs' mark was first used in commerce June 24, 2003, and it has remained in continuous use since its registration. *Id.*, Ex. 1 at 3; Vargas Decl. ¶ 5. Products that feature the BEYONCÉ mark are sold on the website <shop.beyonceshop.com.> Vargas Decl. ¶ 5. Among these products are clothing items such as T-shirts and sweatshirts, which retail for approximately $35.00 to $70.00. *Id* ¶ 9.

Defendants Andre Maurice and Leana Lopez operate a business that sells clothing and apparel with the mark FEYONCÉ and certain phrases from Beyoncé's well known songs. Putnam Decl., Ex. 23 at 2. On November 25, 2015, Defendant Maurice applied to register the FEYONCÉ mark with the USPTO. *Id.*, Ex. 6. On November 30, 2015, Maurice applied to

---

[1] Plaintiffs have duly submitted a Rule 56.1 Statement setting forth in numbered paragraphs the material facts they contend are undisputed. Dkt. No. 88. As Plaintiffs point out, Defendants have failed to submit a statement "responding to each numbered paragraph in the statement of the moving party," as required by Local Rule 56.1(b). *See* Def. Reply at 2-3. As a result, the Court deems the contentions made in Plaintiffs' Rule 56.1 statement to be admitted to the extent they are otherwise supported by evidence in the record. *See Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) ("*Pro se* litigants are…not excused from meeting the requirements of Local Rule 56.1."). Nonetheless, the Court exercises its discretion to scrutinize the evidence for any material, disputed issues of fact present in the record. *See id.*; *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001).
[2] The Court takes judicial notice of the trademark registrations and other publicly available USPTO record to the extent that they are relevant in deciding this motion. *See Island Software and Computer Service, Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005).

register an almost identical mark without the accent over the final E (FEYONCE). *Id.*, Ex. 7. Both applications included registration for use in clothing and apparel. *Id.*, Ex 6, 7. Defendants began using the FEYONCÉ mark in commerce in 2016. *Id.*, Ex 22 at 5. On March 22, 2016, the USPTO informed Defendants that it was refusing both applications for several reasons, including because it determined that the marks were confusingly similar to the registered mark BEYONCÉ. *Id.*, Ex. 8, 9. On April 29, 2016, Defendants Maurice and Lopez incorporated their business, Feyonce Inc., and on July 13, 2016, submitted an additional trademark application, this time for the mark "Feyonce Inc." *Id.*, Ex. 21. Defendant Maurice subsequently responded to the USPTO's refusal to register FEYONCE, arguing that the mark is not confusingly similar to BEYONCÉ. *Id.*, Ex. 10. On October 31, 2016, the USPTO again refused to register the mark, finding Defendant Maurice's argument "unpersuasive," and suspending the application. *Id.*, Ex. 11.

After beginning to use the mark FEYONCÉ in commerce in at least March of 2016, Defendants sold clothing items on <feyonceshop.com> until at least October 26, 2016. *Id.*, Ex. 25. From at least January 15, 2017 through May 15, 2017, Defendants sold similar items on Etsy.com through a shop called "FeyonceShop." *Id.*, Ex. 26. On November 17, 2017, Defendants represented to the Court that they had stopped selling FEYONCÉ products, but that they continued to own the domain name <feyonceshop.com> and the email address feyonceinc@yahoo.com. Dkt. No. 96.

## B. Procedural Background

On February 22, 2015, counsel for Plaintiffs' sent a cease and desist letter to Defendant Maurice demanding that Defendants stop using the FEYONCÉ mark, abandon their trademark applications, and transfer the domain name <feyonceshop.com> to Plaintiffs. Putnam Decl, Ex.

3

14. Not receiving a response, on April 5, 2016, Plaintiffs filed a complaint against Defendants Maurice and Lopez, in addition to Lee Lee and Feyonce, Inc., asserting causes of action for Federal Trademark Infringement, in violation of 15 U.S.C. § 1114; Federal Unfair Competition, in violation of 15 U.S.C. § 1125(a); Federal Trademark Dilution, in violation of 15 U.S.C. 1125(c); Deceptive Acts and Practices, in violation of New York General Business Law § 349; Trademark Dilution, in violation of New York General Business Law § 360-L; common law unfair competition; and unjust enrichment. Dkt. No. 1. As relief, Plaintiffs request (1) an injunction enjoining Defendants from using the FEYONCÉ mark and requiring the transfer of the domain name <feyonceshop.com> to Plaintiffs; (2) compensatory, statutory, and exemplary damages; (3) an accounting of Defendants' gains and profits; and (4) costs and attorneys' fees. *Id.* at 23-25.

On July 14, 2016, Defendants Maurice and Lopez, who are representing themselves pro se, filed an answer to the complaint. Dkt. No. 33. Corporate defendant Feyonce, Inc. failed to secure counsel, and the Clerk of the Court issued a certificate of default against the corporation for failing to appear. Dkt. No. 42. Plaintiffs thereafter moved for default judgment against Feyonce, Inc. Dkt. No. 55. The Court denied the motion without prejudice while the case against the individual defendants proceeds. Dkt. No. 84. The Court also denied Defendants' motion to dismiss for lack of venue or, alternatively, to transfer the case to the Western District of Texas. *Id.*

Now before the Court is Plaintiffs' motion for summary judgment on their claims for federal trademark infringement, federal and New York unfair competition, and federal and New York trademark dilution, and for the entry of a permanent injunction against individual Defendants Maurice and Lopez. Plaintiffs filed the instant motion and accompanying exhibits on

November 3, 2017. Dkt. No. 87. Defendants Maurice and Lopez filed an opposition on November 17, 2017, Dkt. No. 96, and Plaintiffs filed their reply on November 27, 2017, Dkt. No. 97.

## II. Legal Standard

A court may not grant a motion for summary judgment unless all of the submissions taken together "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Summary judgment is appropriate when 'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Smith v. County of Suffolk*, 776 F.3d 114, 121 (2d Cir. 2015) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "[I]n making that determination, the court is to draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In seeking summary judgment, the initial "burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential*

5

*Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir. 1994). If the non-moving party would bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant "demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact" to survive summary judgment. *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citation omitted) (quoting *Celotex Corp.*, 477 U.S. at 323).

### III. Discussion

#### A. Federal Trademark Infringement

To prove trademark infringement under 15 U.S.C. § 1114, a plaintiff must satisfy a two-prong inquiry: first, the plaintiff must show that its mark is entitled to protection; and second, the plaintiff must show that "defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Virgin Enterprises Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003) (citing *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1074 (2d Cir. 1993). With respect to the first prong, a certificate of registration with the USPTO constitutes prima facie evidence that the mark is protectable. *See Guthrie Healthcare System v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016). Furthermore, when a registered mark has been in continuous use for five consecutive years following the registration, the right to that mark is considered "incontestable" so long as there are no ongoing proceedings, proper filings have been made with the USPTO, and the mark is not generic. *See* 15 U.S.C. 1065. The parties in this case do not dispute that Plaintiffs' BEYONCÉ mark is registered with the USPTO and has been in continual use for over five consecutive years. Plaintiffs' mark is therefore

6

protectable as a matter of law.

Whether the Court may grant summary judgment in favor of the Plaintiffs for federal trademark infringement thus turns on the second prong. In other words, summary judgment may be appropriate if, considering the record as a whole, "the undisputed evidence would lead to only one conclusion as to whether confusion is likely." *See Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 478 (2d Cir. 1996). "Normally, the likelihood of confusion is a factual question, centering on the probable reactions of prospective purchasers of the parties' goods." *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 584 (2d Cir. 1990). To assess the likelihood of confusion between the two marks, the Court looks to the factors articulated in *Polaroid Corp. v. Polaroid Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961) (considering the strength of the senior mark, the similarity of the marks, the proximity of the products in the marketplace, the likelihood that the owner of the senior mark will bridge the gap, actual confusion, the presence of bad faith on the part of the defendant, the quality of the defendant's products, and consumer sophistication). "If a factual inference must be drawn to arrive at a particular finding on a *Polaroid* factor, and if a reasonable trier of fact could reach a different conclusion, the district court may not properly resolve that issue on summary judgment." *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 215 (2d Cir. 2003). In weighing the factors, the Court must not lose sight of the inquiry's touchstone: whether or not it is likely "that an appreciable number of ordinarily prudent purchasers would be confused as to the source of the goods which they are purchasing or in distinguishing one product from another." *Miller Brewing Co. v. Carling O'Keefe Breweries of Canada, Ltd.*, 452 F. Supp. 429, 444 (W.D.N.Y. 1978) (citing *Avon Shoe Co. v. David Crystal, Inc.*, 279 F.2d 607, 612 (2d Cir. 1960)).

For the reasons that follow, the Court concludes that there is a triable issue of fact as to

whether the similarity between the marks is likely to cause confusion.[3] The degree of similarity between the marks is "a key factor in determining likelihood of confusion." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 117 (2d Cir. 2006). "The question is not merely how many points of similarity the marks share, but whether they create the same general overall impression." *Am. Auto. Ass'n v. AA Auto. Club of Queens, Inc.*, No. 97CV1180, 1999 WL 97918, at *5 (E.D.N.Y. Feb. 8, 1999) (citing *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1046 (2d Cir. 1992)). Indeed, "even close similarity between two marks is not dispositive of the issue of likelihood of confusion." *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 458 (2d Cir. 2004). Nor is the prong satisfied if the similarity merely results in an association between the products in a consumer's mind, as opposed to confusion regarding the source, sponsorship, or affiliation of the products. *See Application of Ferrero*, 479 F.2d 1395, 1397 (C.C.P.A. 1973) ("The fact that one mark may bring another mark to mind does not in itself establish likelihood of confusion as to source. The very fact of calling to mind may indicate that the mind is distinguishing, rather than being confused by, two marks.") (internal citation omitted); *see also Schieffelin & Co. v. Jack Co. of Boca, Inc.*, 850 F. Supp. 232, 248 (S.D.N.Y. 1994) (noting that "to parody a mark, it is necessary to copy at least enough of the original to call it to the mind of people viewing the parody").

Here, the marks are certainly extremely similar in text, font, and pronunciation. *See Pfizer v. Y2K Shipping & Trading, Inc.*, No. 00CV 5304, 2004 WL 896952, at *5 (E.D.N.Y. 2004) (In assessing similarity, "courts analyze the similarity in pronunciation and appearance of

---

[3] The Court acknowledges that the USPTO has refused to register the FEYONCÉ mark due to a likelihood of confusion with the BEYONCÉ mark. While such refusals are entitled to substantial weight in assessing likelihood of confusion for purposes of trademark infringement, they are "not conclusive." *See Syntex Laboratories, Inc. v. Norwich Pharmacal Co.*, 437 F.2d 566, 569 (2d Cir. 1971).

8

each and the manner in which they are presented to consumers."). The difference between the two is the first letter, which in other cases was not enough to save an allegedly infringing junior mark from a finding of likelihood of confusion as a matter of law. *See id.* However, this does not end the Court's inquiry. By replacing the "B" with an "F," Defendants have created a mark that sounds like "fiancé," i.e., a person who is engaged to be married. As a result, FEYONCÉ is a play on words,[4] which could dispel consumer confusion that might otherwise arise due to its facial similarity to the BEYONCÉ mark. *See Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 417 ("If the difference is...such to convey to the ordinary viewer that this is a joke, not the real thing, then confusion as to source, sponsorship, affiliation or connection is unlikely.").

Plaintiffs rely on *Pfizer*, a case in which the court did find that there was a likelihood of confusion between two similar marks as a matter of law. *Pfizer*, 2004 WL 896952, at *4 (The similarity in sound and spelling between "VIAGRA" and "TRIAGRA" "is likely to lead consumers to believe that Defendants' product is affiliated with that of Plaintiff."). However, that case is distinguishable from the case at hand. In *Pfizer*, the substitution of the letters "TR" for "V" did not result in a new word with a different connotation than "VIAGRA," since "TRIAGRA" (or another word with the same sound) has no dictionary definition. Instead, the instant case is more readily analogized to *Nike*, 6 F.3d 1225. In *Nike*, the Seventh Circuit

---

[4] The Court is unprepared to conclude that Feyoncé rises to the level of parody, as there is no evidence in the record to suggest that Defendants intended their products to convey a message about or critique of Beyoncé. *See Harley–Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 813 (2d Cir. 1999) (requiring that a trademark parody make some comment on the original work to qualify as parody). However, "even without recourse to the First Amendment," a pun may still be "relevant to the extent that the joke is clear enough to result in no confusion under the statutory likelihood of confusion analysis." *Tommy Hilfiger*, 221 F. Supp. 2d at 416; *see also Nike Inc. v. Just Did It Enterprises*, 6. F.3d 1225, 1228 (7th Cir. 1993) (Under the Lanham Act, "parody is not an affirmative defense but an additional factor in the analysis."). Thus, even a pun on an existing mark that does not contain an expressive message may avoid infringing if it is adequately distinguishable from the existing mark by virtue of the pun. *See Tommy Hilfiger*, 221 F. Supp. 2d at 416.

reversed the lower court's entry of summary judgment for trademark infringement in favor of the well-known brand. *Id.* The allegedly infringing products were t-shirts and sweatshirts displaying the word "MIKE" and a "swoosh" logo identical to the one made famous by Nike. *Id.* at 1227. The lower court there "concluded as a matter of law that MIKE and NIKE were too similar and likely to confuse consumers" because the marks were virtually identical. *Id.* In reversing, the Seventh Circuit reasoned that a jury could find that consumers "making the decision to purchase or not to purchase" MIKE products might not be "confused…into thinking that they were a Nike product." *Id.* at 1299-30. Defendant in that case went so far as to admit that his products may be confused for Nike products "from across the room," but the court found that there was a triable issue as to whether "any initial confusion ends with a closer look, when the observer 'gets it.'" *Id.* Whether observers found the Nike/Mike pun amusing was also irrelevant—the "ultimate question" was whether the pun was sufficient to dispel confusion among the consuming public. *Id.* at 1228.

Like in *Nike*, in this case, because of the additional connotation of "fiancé," allowing all inference in favor of the non-moving party, a reasonable jury may conclude that consumers looking for BEYONCÉ products are unlikely to select a FEYONCÉ product inadvertently. *See also Tommy Hilfiger*, 221 F. Supp. 2d at 421 (granting alleged infringer's motion for summary judgment because the junior mark was a readily perceived pun unlikely to cause confusion); *Schieffelin*, 850 F. Supp. at 235 ("[W]hether [a] parody would be sufficiently strong to overcome the potential for consumer confusion was an issue of fact to be decided at trial."). Evidence in the record indicates that many purchasers of FEYONCÉ products are, in fact, engaged, just as many MIKE product purchasers were named Mike. *Nike*, 6 F.3d at 1230. Viewed in the light most favorable to Defendants, this evidence suggests that consumers are understanding the pun,

10

rather than confusing the brands. A rational trier of fact could nonetheless determine that consumers might mistakenly believe FEYONCÉ products are sponsored by or affiliated with BEYONCÉ products, but the Court cannot conclude that the marks are confusingly similar as a matter of law.

Because the Court is unconvinced as to similarity, it is also unprepared to conclude as a matter of law that Defendants acted in bad faith. *Cf. Pfizer*, 2004 WL 896952, at *5 ("Bad faith… is established where there is evidence of actual knowledge of the senior user's mark and the marks are so similar that it seems clear that deliberate copying has occurred.") (internal quotation marks omitted). While Defendants clearly selected their mark because of its association with Plaintiffs' mark, it is not at all clear that they hoped to capitalize on "confusion between" the products. *See Flat Rate Movers v. FlatRate Moving & Storage, Inc.*, 104 F. Supp. 3d 371, 380 (S.D.N.Y. 2015); *see also Tommy Hilfiger*, 221 F. Supp. 2d at 419 ("In one sense a parody is an attempt to derive benefit from the reputation of the owner of the mark….The benefit to the one making the parody, however, arises from the humorous association, not from public confusion as to the source of the marks.") (quoting *Jordache Enters., Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1486 (10th Cir. 1987). Indeed, by choosing a mark that sounds identical to fiancé, Defendants may have purposefully differentiated their products by eliciting a mental association with a word that has a dictionary definition unrelated to Beyoncé. *See id.* ([I]n the case of parody, the intent is not necessarily to confuse the public but rather to amuse.") (internal quotation marks omitted).

Of course, several of the *Polaroid* factors weigh in favor of a finding of likelihood of confusion. First, Plaintiff's mark is strong. *See* Cadbury, 73 F.3d at 479 ("[W]hen a mark is registered and fanciful," meaning it lacks a dictionary definition, "the plaintiff has met its burden

on the question of strength.") (internal quotation marks omitted). Second, both lines of products include apparel sold online, and are therefore in close proximity in commerce. *See Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576, 582 (2d Cir. 1991) ("To the extent goods…serve the same purpose [and] fall within the same general class…the use of similar designations is more likely to cause confusion."). Because the parties travel in the same channels of commerce, the bridging the gap factor leans in the same direction. *See Star Indus. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 387 (2d Cir. 2005) (noting that where the parties' products "are already in competitive proximity, there is really no gap to bridge"). Third, it is unlikely that consumers of the apparel, which is not particularly expensive, are sophisticated. *See Phillips-Van Heusen Corp. v. Calvin Clothing Co., Inc.*, 444 F. Supp. 2d 250, 257 (S.D.N.Y. 2006) ("[T]he average clothing customer is not particularly sophisticated."). Nonetheless, the core of the inquiry is whether ordinary purchasers would have difficulty distinguishing the products or ascertaining whether the junior product is affiliated with or sponsored by the senior mark's owner, and the Court cannot conclude as a matter of law that this type of confusion is likely.

### B. Unfair Competition

To succeed on a claim for unfair competition under 15 U.S.C. 1125, a plaintiff must prove both that it has a mark that is entitled to protection and that the defendant's mark would likely cause confusion as to the origin of the defendant's goods or the sponsorship of those goods. *See Legends Are Forever, Inc. v. Nike, Inc.*, 58 F. Supp. 3d 197, 205-06 (N.D.N.Y. 2014). This two-pronged inquiry mirrors the test for trademark infringement under 15 U.S.C. 1114. *Id.* at 205. To establish unfair competition under New York common law, too, a plaintiff must show that defendant's use results in a likelihood of confusion between the two marks at issue. *See ESPN, Inc. v. Quiksilver, Inc.*, 586 F. Supp. 2d 219, 230 (S.D.N.Y. 2008). Because

the Court concludes that a triable issue of fact exists with regard to the likelihood of confusion, as discussed *supra*, Plaintiffs' motion for summary judgment on their unfair competition claims is denied.

### C. Trademark Dilution

#### 1. Federal Trademark Dilution

The owner of a famous mark can succeed on a claim of trademark dilution under federal law against an individual or entity who "commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C. § 1125(c)(1). Dilution by blurring is defined as the "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(C). In evaluating whether a mark is likely to cause dilution by blurring, courts may consider all relevant factors, including the following: (1) the degree of similarity between the marks; (2) the degree of distinctiveness of the famous mark; (3) the extent to which the owner of the famous mark is engaging in exclusive use of the mark; (4) the degree of recognition of the famous mark; (5) whether the use of the junior mark intended to create an association with the famous mark; (6) any actual association between the mark and the famous mark. 15 U.S.C. § (c)(2)(B). The analysis "must ultimately focus on whether an association, arising from the similarity between the subject marks, impairs the distinctiveness of the famous mark—that is, the ability of the famous mark to serve as a unique identifier." *Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F. Supp. 3d 425, 434 (S.D.N.Y. 2016) (citing *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 736 F.3d 198, 204 (2d Cir. 2013) (internal quotation marks omitted).

As previously discussed, Plaintiffs' mark is famous and distinctive. In addition, there is no dispute that Defendants use the FEYONCÉ mark in commerce, and that the BEYONCÉ mark's fame predates the Defendants' first sale of a FEYONCÉ product. The question, then, is whether Plaintiffs can establish likelihood of dilution as a matter of law. Several of the factors certainly lean in this direction: Plaintiffs are engaging in exclusive use of the famous mark, which is highly recognizable, it seems clear on the face of the record that Defendants sought to associate their mark with Plaintiffs', and Plaintiffs' have presented evidence that consumers do indeed associate the FEYONCÉ mark with BEYONCÉ. Even when such association was intended, when a defendant does so "imperfectly, so as to convey the simultaneous message that it was not in fact a source" of the famous mark's products, the risk of blurring may be minimal. *See Louis Vuitton Malletier, S.A .v. HauteDiggity Dog, LLC*, 507 F.3d 252, 268 (4th Cir. 2007). The "operative question is whether the *kind* of association [Defendants] creat[e] here is likely to impair the distinctiveness of [Plaintiffs'] marks." *My Other Bag*, 156 F. Supp. 3d at 439. Defendants' mark could be considered a pun—it is clearly a reference to Plaintiff Beyoncé, but it is just as clearly a signifier of a specific relationship status. A reasonable factfinder may determine that, given the similarity between the two marks, Defendants' use of FEYONCÉ impairs the distinctiveness and selling power of the BEYONCÉ mark. However, because Defendants' have not merely co-opted the BEYONCÉ mark, but rather repurposed it in a way that can be distinguished from the original, a reasonable factfinder could also conclude that there is little risk of dilution. *Cf. Hormel Foods Corp. v. Jim Henson Productions, Inc.*, 73 F.3d 497, 506 (2d Cir. 1996) (noting that parody tends to increase rather than undermine the public identification of a famous mark). Because the outcome is not compelled as a matter of law, the Court denies Plaintiffs' motion for summary judgment on their federal trademark dilution claim.

2. New York Trademark Dilution

To prevail on a claim for trademark dilution under New York General Business Law § 360-1, a plaintiff "must prove (1) that the trademark is truly distinctive or has acquired secondary meaning, and (2) a likelihood of dilution either as a result of 'blurring' or 'tarnishment.'" *U-Neek, Inc. v. Wal-mart Stores, Inc.*, 147 F. Supp. 2d 158, 175 (S.D.N.Y. 2001) (citing *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 42 (2d Cir. 1994)). Plaintiffs' mark is registered and incontestable, and Plaintiffs have therefore established a rebuttable presumption of distinctiveness as a matter of law. *See Johnson & Johnson Consumer Companies, Inc. v. Aini*, 540 F. Supp. 2d 374, 301 ("[W]hen the USPTO registers a mark without requiring proof of a secondary meaning, a presumption arises that the mark is more than merely descriptive but is, rather, inherently distinctive."). Defendants point to nothing that would rebut this presumption.

However, summary judgment is inappropriate because there remain factual questions that bear on the second prong: likeliness of dilution. As with federal law, under New York law "[d]ilution by 'blurring' may occur where the defendant uses or modifies that plaintiff's trademark to identify the defendants' goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." *U-Neek*, 147 F. Supp. 2d at 175.[5] New York courts consider six factors when determining if blurring is likely: "(1) similarity of the marks, (2) similarity of the products covered by the marks, (3) sophistication of consumers, (4) predatory intent, (5) renown of the senior mark, (6) renown of the junior mark." *Mead Data Cent., Inc. v. Toyota Motor Sales, Inc.*, 875 F.2d 1026, 1035 (2d

---

[5] Dilution by tarnishment occurs when a mark is either "linked to products of shoddy quality" or "portrayed in an unwholesome or unsavory context" such that "the trademark's reputation and commercial value might be diminished." *L & L Wings*, 676 F. Supp. 2d at 190. Plaintiffs argue that they are entitled to summary judgment because they have established dilution by blurring, rather than by tarnishment, and therefore the Court does not reach the issue of whether there is a likelihood of dilution by tarnishment.

15

Cir. 1989). The first five of these factors are "closely analogous" to the *Polaroid* factors. *L & L Wings, Inc. v. Marco-Destin, Inc.*, 676 F. Supp. 2d 179, 189 (S.D.N.Y. 2009). As previously discussed, the Court concluded that factual questions related to the *Polaroid* factors preclude a finding of likeliness of confusion as a matter of law. Therefore, Plaintiffs' motion for summary judgment on its New York trademark dilution claim is also denied.

### D. Permanent Injunction

"A permanent injunction is appropriate where the party seeking the injunction has succeeded on the merits and shows the absence of an adequate remedy at law and irreparable harm if the relief is not granted." *Patsy's Italian Restaurant, Inc. v. Banas*, 658 F.3d 254, 272 (2d Cir. 2011) (internal quotation marks omitted). Because the Court has concluded that triable issues of fact remain on the merits, the motion for a permanent injunction is denied.

## IV. Conclusion

For the foregoing reasons, Plaintiffs' motion for partial summary judgment and entry of a permanent injunction against Defendants Andre Maurice and Leana Lopez is DENIED.

A status conference will be held on November 1, 2018, at 10:00 AM in Courtroom 906 of the Thurgood Marshall Courthouse. The parties shall meet and confer regarding settlement and possible dates for trial and submit a joint letter no later than one week prior to the conference indicating available trial dates and whether they would like referral to a magistrate judge for a settlement conference.

Chambers will mail copies of this Memorandum Opinion and Order to pro se Defendants and that mailing will be noted on the public docket. This resolves Dkt. No. 87.

SO ORDERED.

Dated: September 30, 2018

New York, New York

_____
ALISON J. NATHAN
United States District Judge